339 P.2d 1026

T. Collins JACKSON, Plaintiff and Appellant,

v.

Kendrick HARWARD, Blain C. Curtis, Heber Christianson, McKay Larson, Tex R. Olsen, Spencer Olin, Defendants and Respondents.

No. 9000.

Supreme Court of Utah.

May 29, 1959.

------◆------

Ben D. Browning, John H. Allen, Salt Lake City, for appellant.

Ken Chamberlain, Richfield, for respondents.

HENRIOD, Justice.

Appeal from a dismissal of plaintiff's complaint on motion for summary judgment. Affirmed. Costs to defendants.

Plaintiff conducted a business wherein he furnished a closed-circuit television service to subscribing residents of Sevier County. Such service commonly is called a "Community Antenna Television System." His facilities received electric impulses thrust through the ether by several Salt Lake City telecasters, which plaintiff piped through the closed-circuit over wires to his customers who were thus furnished with sound and pictures on their television sets. He had no license or other authority from any official source to capture and convert the impulses but apparently needed none, since his operation was not interstate and there was no state statutory interdictions against such service.

Defendants are Sevier County Commissioners, the County Attorney and two technicians who, pursuant to state legislation enacted in 1957 [1] initiated and operated a "booster" facility or station [2] for the benefit of county residents, which gave rise to this litigation. By operating the "booster," says the plaintiff, the defendants 1) trespassed on his property and business by jamming his circuits, 2) wilfully, negligently and carelessly, 3) resulting in a nuisance, 4) by use

1. Title 11–2–1, Utah Code Annotated 1953, as amended (Laws of Utah 1957, Chapter 22): "The governing body of any * * county may designate and set apart for use as * * * television transmission and relay facilities * * * any lands, buildings or personal property owned by such * * * counties * * * that may be suitable for such purposes. * * *" Title 11–2–2, Utah Code Annotated 1953, as amended (Laws of Utah 1957, Chapter 22): "Such local authorities may organize and conduct plays, games * * * and in areas so remote from regular transmission points of the large television stations that television reception is impossible without special equipment, and adequate, economical and proper television is not available to the public by private sources, said local authorities, may equip and maintain any type of transmission or relay facility that operates by means of translator stations, that is authorized by law for the purpose of supplying television to the people. * * * *"

2. A "booster" station appears to be one that captures impulses from a television station and increases the volume of such impulses for continued transmission through the atmosphere, not by wire or closed-circuit, so that persons unable to capture the impulses from the initiating broadcasting station, may do so by the increase in intensity given to the impulses by the booster facility.

138

of public funds, 5) conspiringly, and 6) maliciously, all in violation of state law with respect to intrastate transmission, and federal legislation[3] anent interstate wireless transmission of sound and pictures.

Preliminarily, it may be pointed out that the state statute authorizes no clash with any federal legislation having to do with interstate airwave activity. The pleadings and answers to interrogatories reflect no such interference by defendants or by plaintiff, both appearing to have operated intrastate. Even otherwise, arguendo, there is absent anything to demonstrate 1) a "booster" operation, or a means of relaying the impulses that was inimicable to Utah legislation or 2) submissive to federal control.

Here, we believe, is something akin to the flying of a kite over an uncontrolled area of the public and private domain for the entertainment of a paid onlooker, whose vision is obscured by a collision with another kite flown by another entrepreneur. Concededly, regulation by proper authority might protect against such eventuality, but absent such regulation, it could not be said that one arbitrarily could pre-empt the use of the atmosphere to the protectable exclusion of others on a theory of first user. It is like one who may operate a telescope for hire so that persons may look at the firmament, but hardly could such operator claim an enjoinder of passing traffic that might disturb the focus,—unless such a situation were regulable by proper authority. It does not appear from the pleadings and the discovery procedure employed in this case that plaintiff had any protectable right that could result in injunctive relief and defendants had no duty to refrain from doing that which was not prohibited by any proper authority.

The Federal Communications Commission reports presented to the court after oral arguments are uncontrolling, and no compelling authority has been urged by either side that seriously challenges the views herein expressed.

WADE and McDONOUGH, JJ., and MERRILL C. FAUX, D. J., concur.

CROCKETT, C. J., concurs in the result.

---

3. Plaintiff cites Sections 301, 307, 309 and 319 of the Communications Act of 1934, as amended (47 U.S.C.A. §§ 301, 307, 309 and 319) as those which allegedly were violated by defendants.